Matthew Campbell, Colo. No. 40808*
Jason Searle, Colo. No. 57042*
Allison Neswood, Colo. No. 49846*
Malia Gesuale, Colo. No. 59452*
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Avenue
Boulder, CO 80302
(t): (303) 447-8760
mcampbell@narf.org
searle@narf.org
neswood@narf.org
gesuale@narf.org

*Counsel for the Havasupai Tribe and the Hopi Tribe*

Paul Spruhan, N.M. No. 12513
Sage G. Metoxen, AZ No.030707**
Louis Mallette, N.M. No. 149453*
Tamara Hilmi Sakijha, N.Y. No. 5844204*
Navajo Nation Department of Justice
2521 Old BIA Building P.O. BOX 2010
Window Rock, AZ 86515
(t): (927) 871-6210
paspruhan@nndoj.org
smetoxen@nndoj.org
lmallette@nndoj.org
tsakijha@nndoj.org

*Counsel for the Navajo Nation*

Denten Robinson, AZ No. 24764
DR LAW PLLC
1930 E. Brown Road, Suite 103
Mesa, AZ 85203
(t): (480) 500-6656
denten@drlawfirm.com

*Counsel for the Havasupai Tribe*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Arizona State Legislature, et al.,

Plaintiffs,

v.

Joseph R. Biden, Jr., et al.,

Defendants.

No. CV-08026-PCT-SMM

**TRIBAL NATIONS' RULE 24 MOTION TO INTERVENE FOR LIMITED PURPOSE**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a), or, in the alternative 24(b), the Havasupai Tribe ("Havasupai"), the Hopi Tribe ("Hopi"), and the Navajo Nation (collectively, "Tribal Nations") respectfully move this court to intervene in the above captioned case. The Tribal Nations seek to intervene for the limited purpose of filing a motion to dismiss under Rules 12(b)(7) and 19(b). The proposed motion is attached as Exhibit A.

The Tribal Nations fulfill all the criteria to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, for permissive intervention under Rule 24(b)(1). The Tribal Nations seek intervention in support of the Defendants, President Joseph R. Biden, Jr., et al. ("United States") with respect to Plaintiffs' claims regarding Baaj Nwaavjo I'tah Kukveni – Ancestral Footprints of the Grand Canyon National Monument ("Ancestral Footprints" or "the Monument").

Counsel for the Tribal Nations conferred with counsel for the parties to determine their position on this motion. The Arizona Legislature was unable to take a position on the Motion to Intervene. The United States indicated that it would wait to see the filed motion before it takes a position on the Motion to Intervene.

## I. FACTUAL BACKGROUND

Ancestral Footprints receives its name from the Indigenous names given to the area by the Havasupai and Hopi. 88 Fed. Reg. 55331, 55331 (Aug. 15, 2023) ("Monument Proclamation"). Baaj nwaavjo (BAAHJ – NUH-WAAHV-JOH) means "where Indigenous peoples roam" in the Havasupai language, and i'tah kukveni (EE-TAH – KOOK-VENNY) means "our ancestral footprints" in the Hopi language. *Id*. At the center of this region is the Grand Canyon. *Id.* Since time immemorial, the Tribal Nations and several other indigenous nations have called this region home. The area retains "profound historical, cultural, and religious significance" to the Tribal Nations. *Id.*

In the early years of the National Parks Service, Congress created Grand Canyon National Park (or "the Park"). Sadly, federal "conservation" of the Park was used to justify denying Indigenous Peoples, including the Tribal Nations and their members, access to their homelands. *Id.* The Tribal Nations continued their traditions on the boundaries of the park, still within their sacred homelands. Years later and after significant shifts in federal Indian policy, the Tribal Nations advocated for additional protections to the federal public lands in the region. These lands to the south, northeast, and northwest of the Park contain over "3,000 known cultural and historic sites, including 12 properties listed on the National Register of Historic Places, and likely a great many more in areas not yet surveyed." *Id.* at 55333. They contain numerous archaeological sites and are "havens for sensitive and endangered species— including the California condor, desert bighorn sheep, and endemic plant and animal species"—all of which are themselves "objects of independent historic or scientific interest." *Id.* at 55332. They contain the markers of historic and continued use by Tribal Nations, including historic trail systems and evidence of ancient habitation. *Id.* at 55333-34. Their landscapes tell a geographic, hydraulic, and biological history that reaches back beyond even Tribal historical memory. *Id.* at 55335.

In recognition of these unique resources, on August 8, 2023, President Biden established Ancestral Footprints National Monument. *See id.* at 55331. Within the Proclamation, President Biden sought to empower the Tribal Nations and several other sister tribal nations of the region to provide guidance and recommendations on the management of the Monument. To that end, the Proclamation established the Baaj Nwaavjo I'tah Kukveni—Ancestral Footprints of the Grand Canyon Commission ("Commission"), a self-governing body made up of elected Tribal officers from Indigenous Nations with cultural ties to the region, of which the Tribal Nations are members. *Id*. at 55340.

The Arizona State Legislature, the Treasurer of the State of Arizona, an Arizona county, and two Arizona towns have now filed this suit seeking to overturn the Monument Proclamation. The Tribal Nations ask that this court grant them intervention in this matter as they have significant interests in the Monument Proclamation and Ancestral Footprints. Because the Tribal Nations will necessarily be impacted by the outcome of this litigation and are not adequately represented by the existing parties, the Tribal Nations are entitled to intervention here.

## II. ARGUMENT

### A. The Tribal Nations are Entitled to Intervene as a Matter of Right.

Intervention as of right is governed by FRCP 24(a), which provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

The four-part test under Rule 24(a) requires:

> (1) the applicant must file a timely motion; (2) the applicant must have a "significantly protectable" interest related to the subject matter of the action; (3) the disposition of the action may practically impair or impede the applicant's ability to protect that interest; and (4) that interest must not be adequately represented by the existing parties in the lawsuit.

*WildEarth Guardians v. Provencio*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *1 (D. Ariz. Aug. 11, 2016) (citing *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). In the Ninth Circuit, the requirements of Rule 24(a) are interpreted "broadly in favor of . . . intervention[,]" *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), and the court's review is "guided primarily by practical and equitable considerations." *Donnelly v. Glickman*, 159 F.3d 405, 409

(9th Cir. 1998). "When ruling on a motion to intervene as a matter of right, the court accepts all of the applicant's non-conclusory allegations as true." *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *1. The Tribal Nations satisfy all requirements for Rule 24(a) intervention as of right.

**1. The Tribal Nations' Motion to Intervene is Timely.**

Timeliness is a "threshold requirement for intervention." *Oregon*, 913 F.2d at 588. Timeliness is "determined by the totality of the circumstances" and hinges on "three primary factors:" (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice the intervention would cause other parties; and (3) the reason for and length of any delay. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). The Tribal Nations have filed this motion to intervene just 10 weeks after the case was originally filed, and before the United States has filed any responsive pleading. Granting intervention at this stage would not prejudice any party, as there has been no answer filed, no discovery conducted, and no scheduling conference. Nothing else about the Tribal Nations' intervention would prejudice any party. And lastly, there has been no delay in the Tribal Nations' intervention. Thus, the Tribal Nations' motion is timely.

**2. The Tribal Nations have Significantly Protectable Interests in the Present Litigation.**

An applicant has a "significant protectable interest" in an action if "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998) (citing *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996)). In *United States v. City of Los Angeles, California*, the Ninth Circuit set out an analytical framework for the interest prong:

> The interest test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the interest test directs courts to make a practical, threshold inquiry, . . . and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks, citations, and brackets omitted). As this Court has stated, a "party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *2 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

The importance of the Ancestral Footprints Monument to the Tribal Nations and their members, as the stewards of these lands from time immemorial, is centered in the lands' role as "sacred components of the [Tribal Nations'] origin and history[.]" Monument Proclamation at 55333. The region is the Tribal Nations' homeland, and within the three Monument areas are locations held sacred by the Tribal Nations and their members. *Id.* Indeed, the Proclamation details the history of how Ancestral Footprints were taken from the Tribal Nations, and their efforts to maintain a relationship with these lands. *Id*. at 55331-553333.

As a result, the Tribal Nations were extensively involved in advocating for the designation of Ancestral Footprints Monument. As President Biden acknowledged in his remarks at the signing of the Monument Proclamation, the Tribal Nations "fought for decades to be able to return these lands, to protect these lands from mining and development, to clear them of contamination, [and] to preserve their shared legacy for future generations." DCPD-202300677: Remarks on Signing a Proclamation Establishing the Baaj Nwaavjo I'tah Kukveni - Ancestral Footprints of the Grand Canyon National Monument Near Tusayan,

Arizona, 2023 DAILY COMP. PRES. DOC. (Aug. 8, 2023).

The Tribal Nations are also members of the Grand Canyon Tribal Coalition, an intertribal coalition whose member Tribal Nations are each intimately connected to the region. In April of 2023, the Coalition formally launched an effort to call on President Biden to designate Ancestral Footprints as a national monument. House Natural Resources Committee Democrats, *Press Conference – Baaj Nwaavjo I'tah Kukveni Grand Canyon National Monument Designation Effort*, YOUTUBE (April 20, 2023), https://www.youtube.com/watch?v=spcVxJllzYo. These efforts show that the Tribal Nations have a significantly protectable interest in the challenge to the Proclamation—a federal action the Tribal Nations supported and which protects these lands and sacred places for their members. *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1397 (9th Cir. 1995) (a party has a significantly protectable interest "in an action challenging the legality of a measure it has supported."); *see United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (concluding a party can have an interest in preserving resources "for the use and enjoyment of their members.").

The Presidential Proclamation at the heart of this case, standing alone, also establishes the Tribes' personal stake as sovereigns in this litigation. The Tribal Nations have an interest in the monument Commission, established to ensure that the care and management of the monument reflect the Tribal Nations' expertise and values. Monument Proclamation at 55340. Through the Commission, the Tribal Nations, as sovereign nations with government-to-government relationships with the United States, are vested with authority to provide guidance and recommendations on management of their sacred ancestral lands within Ancestral Footprints. *Id.* The Arizona Legislature directly attacks the Commission, seeking to abrogate the collaborative, government-to-government management of Ancestral Footprints as established in the

Proclamation. This is a significant interest that may be impaired as a result of the pending litigation. *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *2; *cf. Massachusetts v. EPA*, 549 U.S. 497, 519-20 (2007) (depriving a sovereign of a procedural right, even if it would not guarantee a substantive result, constitutes injury).

The Tribal Nations have several significantly protectable interests in Ancestral Footprints grounded in their historical relationship with the region, their history of advocacy to secure protections for it, and government-to-government relationship in managing the monument through the Commission.

**3. The Tribal Nations' Interests May, as a Practical Matter, Be Impaired by This Litigation.**

If a proposed intervenor "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Cntr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's note to the 1966 amendment). After "finding that a proposed intervenor has a significant protectable interest, courts have little difficulty concluding that the disposition of the case may affect it." *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *2 (citing *Lockyer*, 450 F.3d at 442).

The broad relief requested by Plaintiffs is that Ancestral Footprints be declared unlawful, enjoined, and set aside. Pls.' Compl. at 48, ECF No. 1. Such relief would destroy the many practical and material protections that the Tribal Nations advocated so hard for.

This litigation may also impair the Tribal Nations' interests in the monument Commission. Plaintiffs challenge both the Proclamation and the Antiquities Act based on the establishment of the Tribal Commission. Specifically, Plaintiffs allege that the "Proclamation exceeds Defendants'

authority because the Antiquities Act does not authorize Defendants to grant Native Americans a role in managing Monument land." *Id.* at 45 (Count One). Plaintiffs alternatively allege that "if the Antiquities Act does permit such delegations, it is unconstitutional." *Id.* The existence of the Commission is immensely important for the Tribal Nations as it recognizes the importance of these lands to the Tribes' history, spirituality, and culture. The Commission is permitted to provide "guidance and recommendations," the Secretaries of Interior and Agriculture must "meaningfully engage the Commission," and the Secretaries must consider "integrating the Indigenous Knowledge and special expertise" of the Commission. Monument Proclamation at 55340.

The Commission builds upon the Executive's fulfillment of its obligations to protect and preserve Native religious practices, Executive Order No. 13007, 61 Fed. Reg. 26771 (May 29, 1996) https://www.govinfo.gov/content/pkg/FR-1996-05-29/pdf/96-13597.pdf, as well as the United States' policy to "protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise" their traditional religions, "including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." 42 U.S.C.A. § 1996.

The Proclamation recognizes the history of dispossession of these lands and the government-to-government relationship between the United States and Tribal Nations. The Tribal Nations' sovereign right to participate in the management of their ancestral lands within Ancestral Footprints is therefore squarely at issue in this case, and the Court should have "little difficulty" concluding that the disposition of the case may affect the Tribal Nations' interests. *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *2.

**4. The Existing Parties Do Not Adequately Represent the Tribal Nations' Interests.**

The burden for showing inadequate representation is "minimal[,]" and is satisfied if proposed intervenors can demonstrate that representation of their interests "may be" inadequate. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citations omitted); *WildEarth Guardians*, No. CV-16-08010-PCT-SMM, 2016 WL 8738252, at *2.

To determine whether the applicant's interests are adequately represented by existing parties, the Court considers:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Nw. Forest Res. Council,* 82 F.3d at 838 (citations omitted). The "most important factor" in assessing the adequacy of representation is "how the [applicants'] interest compares with the interests of existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

The Ninth Circuit has held that the United States cannot adequately represent Tribal Nations' interests where the Tribal Nations hold sovereign interests in the outcome of the litigation not shared by the United States. *Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affs.*, 932 F.3d 843, 855 (9th Cir. 2019) (distinguishing *Sw. Cntr. for Biological Diversity*, 268 F.3d 810, in which sovereignty and sovereign interests were not implicated). And even if parties' interests are presently aligned, if they will "not necessarily remain aligned," the proposed intervenor interest is not adequately represented. *Diné Citizens*, 932 F.3d at 854 (citing *White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014)).

**(i) Because of Differing Interests, the United States is Not Necessarily Capable or Willing to "Undoubtably" Make All the Tribal Nations' Arguments.**

"Inadequate representation is most likely to be found when the applicant

asserts a personal interest that does not belong to the general public." 3B James W. Moore et al., Moore's Federal Practice, ¶ 24.07[4], at 24–78 (2d ed. 1995). And where the United States' "overriding interest . . . must be in complying with [the law]," rather than in the outcomes essential to tribal sovereignty and self-governance, the United States is an inadequate representative of Tribal Nations. *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F. 4th 934, 944 (9th Cir. 2022). Here, the Tribal Nations' interests are grounded in their ancestral relationship to the region and their decades-long efforts to protect these lands.

These interests include the need to protect irreplaceable sites, burials, and resources critical to their cultural survival and the perpetuation of their ways of life. Equally as important, the Tribal Nations also have governmental interests in having a hand in the management of the lands within the Monument, via the Commission. The Tribal Nations have knowledge, understanding, and connection to Ancestral Footprints and its many places, intrinsically tied to their sovereign and cultural survival, that goes well beyond Federal Defendants' interests. The United States has far more generalized public interests underlying its efforts to defend and preserve Ancestral Footprints. This is in part because the United States' constituency reaches far beyond the Tribal Nations' constituencies, and because the United States does not enjoy the same cultural and ancestral connection to the lands as the Tribal Nations. And while the United States may have an interest in defending its actions, its "overriding interest . . . must be in complying with" applicable laws. *Id.* This interest "differs in a meaningful sense from [the Tribal Nations'] sovereign interest" in ensuring protections for and a governmental role in the management of their traditional homeland. *Id.* (citing *Diné Citizens*, 932 F.3d at 856-57) (internal brackets omitted). Even if the Tribal Nations and the federal government share similar goals and legal positions in this litigation, the United States cannot adequately represent the Tribal Nations'

sovereign interests.

Even if it were the case that the Tribal Nations' and the United States' interests were currently aligned in this matter, there is a very real risk of a policy shift created by a change in presidential administration. Such a change raises the possibility of a later divergence of interest. *See City of Los Angeles, Cal.*, 288 F.3d at 403; *see also Western Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017). The changing wishes of the administration are "by no means, wholly irrelevant." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983). And this potential divergence is not speculative. Former President and presumptive 2024 Republican presidential nominee Donald Trump has previously stated on the 2020 campaign trail that he would consider abolishing national monuments. Steve Mistler, *Could Donald Trump Undo the Katahdin Woods and Waters National Monument?*, New Hampshire Public Radio (Nov. 17, 2016), https://www.nhpr.org/2016-11-17/could-donald-trump-undo-the-katahdin-woods-and-waters-national-monument. And he did just that to Bears Ears National Monument—purporting to reduce its size from 1.35 to 0.20 million acres, stripping protections for tribal resources, and reducing the power of the tribal co-management Commission—and to Grand Staircase Escalante National Monument and the Northeast Canyons and Seamounts Marine National Monument. *See* Juliet Eilperin & Joshua Partlow, *Haaland urges Biden to fully protect three national monuments weakened by Donald Trump*, Washington Post (June 14, 2021) https://www.washingtonpost.com/climate-environment/2021/06/14/haaland-biden-national-monuments/. It is also equally as plausible that the United States may argue that the Commission aspect of the Proclamation is severable, should it find it strategic to do so. *See, e.g.* U.S. Reply in Support of Mot. to Dismiss at 18, ECF No. 166, *Garfield Cnty. et al. v. Biden et al.*, No. 22-cv-

00059 (D. Utah May 5, 2023) (arguing severability clause in Bears Ears National Monument Proclamation results in favor of President). The Proclamation here likewise contains a severability clause. Proclamation at 55342.

There is considerable doubt as to whether the United States will raise all of the Tribal Nations' arguments, including considerable doubt as to whether the United States plans to and will continue to raise the Tribal Nations' arguments.

**(ii) The Tribal Nations Offer Necessary Elements to the Proceedings Other Parties Would Neglect.**

As the traditional stewards of these lands, the Tribal Nations have "expertise apart from that of the [U.S. defendants]" and "offer[] a perspective which differs materially from that of the present parties to this litigation." *Sagebrush Rebellion*, 713 F.2d at 528. For this reason and those mentioned above, the Tribal Nations are not adequately represented by the present parties to the litigation.

Accordingly, all four prongs of the test for intervention as of right are amply satisfied, and the Tribal Nations are entitled to intervention as of right.

**B. Alternatively, the Tribal Nations Meet the Requirements for Permissive Intervention.**

If this court finds that the Tribal Nations have not established the requirements for intervention as of right, the Tribal Nations respectfully request that this court allow permissive intervention under Federal Rule of Civil Procedure 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

The Tribal Nations seek to intervene in this case for the purpose of

addressing the legal and factual issues raised by the Plaintiffs regarding Ancestral Footprints, as well as addressing any potential remedy as a result of the court's conclusion. Thus, Rule 24(b)'s common question requirement is met. The second half of the permissive intervention test looks to timeliness and prejudice to the parties. As stated previously, the Tribal Nations' motion is timely, no prejudice will result from granting intervention, and the Tribal Nations bring a perspective to the litigation distinct from that of the other parties on the common questions of law and fact. *See Maverick Gaming LLC v. United States*, No. 3:22-CV-05325, 2022 WL 4547082, at *2-4 (W.D. Wash. Sept. 29, 2022) (allowing Tribe to permissively intervene so that the court can consider the Tribe's Rule 19 motion to dismiss on the merits).

## III. Conclusion

For the reasons stated above, the Tribal Nations respectfully request that their *Motion to Intervene for Limited Purpose* be granted.

RESPECTFULLY SUBMITTED this 24th day of April 2024.

*/s/ Paul Spruhan*
Paul Spruhan, N.M. No. 12513
Sage G. Metoxen, AZ No.030707 **
Louis Mallette, N.M. No. 149453*
Tamara Hilmi Sakijha, N.Y. No. 5844204*
Navajo Nation Department of Justice
2521 Old BIA Building P.O. BOX 2010
Window Rock, AZ 86515
Phone: (927) 871-6210
Fax: (928) 871-6177
paspruhan@nndoj.org
smetoxen@nndoj.org
lmallette@nndoj.org
tsakijha@nndoj.org

*Counsel for the Navajo Nation*

Matthew Campbell, Colo. No. 40808*
Jason Searle, Colo. No. 57042*
Allison Neswood, Colo. No. 49846*

Malia Gesuale, Colo. No. 59452*
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Avenue
Boulder, CO 80302
Phone: (303) 447-8760
Fax: (303) 443-7776
mcampbell@narf.org
searle@narf.org
neswood@narf.org
gesuale@narf.org

*Counsel for Applicants Havasupai Tribe and Hopi Tribe*

Denten Robinson, AZ No. 24764
DR LAW PLLC
1930 E. Brown Road, Suite 103
Mesa, AZ 85203
Phone: (480) 500-6656
denten@drlawfirm.com

*Counsel for the Havasupai Tribe*

*Motion for Pro Hac Vice forthcoming
** Motion for Admission pending