**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
ACL@azag.gov

*Attorneys for Proposed Intervenor-*
*Defendant State of Arizona*

Sambo (Bo) Dul (030313)
Sean Berens (034302)
Office of Arizona Governor Katie Hobbs
1700 West Washington Street, 9th Floor
Phoenix, Arizona 85004
(602) 542-6578
bdul@az.gov
sberens@az.gov

*Attorneys for Proposed Intervenor-*
*Defendant Arizona Governor Katie Hobbs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona State Legislature, et al.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>Joseph R. Biden, Jr., et al.,<br><br>　　　　　　Defendants. | No. CV-24-08026-PCT-SMM<br>*consolidated with*<br>CV-24-08027-PHX-DLR<br><br>**STATE AND GOVERNOR OF ARIZONA'S REPLY IN SUPPORT OF MOTION TO INTERVENE** |

1   Two members of the Arizona Legislature and a handful of other governmental actors ("ASL Plaintiffs"), seek to assert harms to the State of Arizona and its executive branch while simultaneously arguing that the State and its Governor should not be permitted to participate in the matter as parties. Neither common sense nor the law supports that position. And it is telling that the ASL Plaintiffs fail to even properly identify the parties seeking to intervene—arguing against intervention by the Attorney General rather than by the State.

"States are not normal litigants for the purposes of invoking federal jurisdiction." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Nor is the impact of states' unique interests limited to the jurisdiction context. *See, e.g.*, *California v. United States*, 180 F.2d 596, 602 (9th Cir. 1950) (noting that a private intervenor's "rights are certainly not as great as that of the State as parens patriae in the maintenance of the welfare of its citizens"). The Supreme Court has thus cautioned against the mistake the ASL Plaintiffs make here—arguing a case that involves a sovereign State "largely as if it were one between two private parties." *Massachusetts*, 549 U.S. at 518-19 (quoting *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907)). A State "has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain." *Id.* "It has the last word," for example, "as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air." *Id.* Thus, the Supreme Court has also held that "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022).

These principles apply with particular force here, where the ASL Plaintiffs premise their claims on asserted harms to the State itself. Perhaps recognizing the persuasive force of the State's sovereign interests, the ASL Plaintiffs do not even attempt to argue that the State is an improper intervenor, instead trying through sleight of hand to argue against intervention by the "**Attorney General** and the Governor." (Emphasis added.) Indeed, they repeat this phrase no less than 58 times and on every page of their 12-page response. *See, e.g.*, Resp. to Mot. to Intervene, Doc. 55 at 4 ("The Attorney General and Governor

1

have failed to make a 'very compelling showing' rebutting the presumption of adequacy.").

But let's be clear—the Attorney General is not seeking to intervene. The **State of Arizona** and the Governor seek to intervene. The Attorney General's only role in this litigation is as legal counsel for the State—a role she has been explicitly granted by the Legislature, *see* A.R.S. § 41-193(A)(3), as this Court has recently observed, *see* Order, Doc. 752, at 3, *Mi Familia Vota v. Hobbs*, No. CV-22-00509-SRB (June 28, 2024) ("[T]he Attorney General shall represent Arizona in any action in federal court." (cleaned up)). And just as this Court would not entertain arguments that conflated the James Otis Law Group with the parties those lawyers represent, it should likewise decline the invitation to focus its inquiry on the State's lawyer rather than the State itself.

To allow others to assert the State's injuries, without allowing the State the "dignity" of being heard, would be contrary to common sense and basic principles of federalism. *See Massachusetts*, 549 U.S. at 519. The State has an interest in its ability to litigate in its name over its sovereign interests. Similarly, the Governor has an interest in her ability to set executive policy and pursue its execution. Mot. to Intervene, Doc. 50, at 7-8.[1] And the Federal Defendants do not speak for the State in its sovereign capacity, the State's fiduciary duties over trust land, the State's right to sue in its own name, or the Governor's authority to make policy and speak for her executive branch. Doc. 50, at 11-12; *see also* Order, Doc. 752, at 3, *Mi Familia Vota*, No. 22-CV-00509-SRB (D. Ariz. June 28, 2024) (rejecting argument that "President Petersen and Speaker Toma" "may assert" the State's "sovereign interests"). Whatever one thinks of the merits of this litigation, the State and its Governor should be heard in the matter. The ASL Plaintiffs' attempts to assert harms to the State and its executive branch and then keep the State and its Governor out of the litigation should be rejected.

---

[1] References to court documents use the ECF page number.

2

### I. The State and Governor possess significant protectable interests.

The State "has, as the proper representative of the public welfare, a right to be heard as an intervenor." *California*, 180 F.2d at 602. Intervention is fundamentally about the "right to be heard" when parties have a "significant protectable interest at stake" in the litigation. *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 982 (9th Cir. 2008). To see the significant protectable interests the State and Governor have in this case, one need look only at the ASL Plaintiffs' complaint, which asserts several purported harms to the State itself. *See, e.g.*, Compl. ¶ 182 ("Uranium mining is also critical for ensuring power provision for the State."); ¶ 188 (asserting that the Proclamation "does not preserve the State's authority").

The complaint likewise asserts several harms to the State Trust Land, administered by the State Land Department, an agency within the Governor's executive branch. *See, e.g.*, Compl. ¶¶ 167-76 (asserting harms to state trust lands), ¶ 191(f) (asserting an interest in "ensuring that Arizona fulfills its duty as trustee of State Trust Lands"), ¶ 191(g), (i) (asserting a right "to sue to protect the State Trust Lands"); *id.* at p. 30 (section titled "The Harmful Effects of the Proclamation on State Trust Land"); *see also* Compl. ¶ 191(h) (acknowledging that "the administration, charge, and control of state land is vested in the state land department") (citation omitted); Doc. 50, at 7-8, 10 (discussing same). The complaint (at ¶ 191(h)) also expressly acknowledges that "[t]he head of the [State Land] Department is, by law, appointed by the governor . . . and shall serve at the pleasure of the governor," and expressly acknowledges that the Department was unlikely to challenge the Proclamation because of the Governor's views on it. (Citation omitted.)

Plaintiffs are "the master of the complaint," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (citation omitted), and here they chose to make the interests of the State of Arizona and its executive branch a central focus of this case. They assert that they have an interest in "ensuring that Arizona fulfills its duty as trustee of State Trust Lands." Compl. ¶ 191(f). Yet they simultaneously contend that

3

the State of Arizona and the Governor whose executive branch manages those State Trust Lands have no such interest and should not be heard. That is untenable.

Arizona law likewise supports a finding of significant protectable interests here. The Governor sets State policy, within the bounds of statutory law, carried out through her administrative entities. *See* Ariz. Const. art. 5, § 4. This includes setting policies over the State Trust Lands, via the appointed Commissioner of the State Land Department. A.R.S. §§ 37-102, 131(A); *see* § 37-101(17); Compl. ¶ 191(h) (acknowledging same). The State, of course, has interests independent of the Governor, and the Attorney General litigates for the State in federal court. A.R.S. § 41-193(A)(3). *Cf. State ex rel. Woods v. Block*, 189 Ariz. 269, 277 (1997) ("[C]onducting litigation on behalf of the state, as authorized by the Legislature, is an executive function.").

Where other parties assert harms to the State and its executive branch, the State and its Governor have significant protectable interests in the litigation. This is particularly so where, as here, both the State and its Governor contest that any such harm is occurring. To allow this suit to go forward without the presence of the State and Governor would offend several of their interests. It would offend the State's ability to define its own harms. It would offend the Governor's ability to effectively set policy, including for the Trust Lands, held in trust by the State through the Land Department. *See ASARCO, Inc. v. Kadish*, 490 U.S. 605, 625-26 (1989); A.R.S. § 37-102(A). It would also upset the State's separation of powers. *See* Ariz. Const. art. III. The State and Governor desire to be heard here to ensure that the State's and executive branch's actual interests are represented.

The ASL Plaintiffs object, arguing that "resolution of claims relating to the federal government's authority will not impair or impede" those interests. Doc. 55, at 8. But even if the federal government's authority is the central focus of the ASL Plaintiffs' challenge, that does not render everything else irrelevant. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) ("It is enough that the interest is protectable under any statute."). The significant protectable interests need only be related to the plaintiff's claims. *Id.* And here they plainly are. The claims raised by the ASL Plaintiffs put directly

4

at issue the powers of the Governor and the State. For example, the power to set policy, including for the Trust Lands, would be undermined if the ASL Plaintiffs were permitted to assert harms belonging to the State and the executive branch, in their absence. The State has a designated representative—the Attorney General, not the ASL Plaintiffs. *See* A.R.S. § 41-193(A)(3).

This yields an interest not only in the *resolution* of this case, but also in its very *litigation*. That interest is separate from that of the Federal Defendants, for whom ensuring the proper balance of Arizona's separation of powers is at most an instrument to defeat standing, not their primary objective.

## II. The Federal Defendants do not adequately represent the State and Governor's interests.

### A. The State and Governor satisfy the "minimal burden" of showing inadequate representation.

To show inadequacy of existing representation, it is sufficient to show that existing representation "may be" inadequate. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). That is a "minimal" burden, *id.*, and "courts generally construe the Rule broadly in favor of proposed intervenors," *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397 (9th Cir. 2022) (cleaned up). Courts look to several factors, including "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Perry v. Prop. 8 Off. Proponents*, 587 F.3d 947, 952 (9th Cir. 2009).

The State and Governor, and the Federal Defendants, have overlapping but distinct interests in this case. Accordingly, it cannot be said that the Federal Defendants "will **undoubtedly** make **all**" of the arguments that the State and Governor would make. *Id.* (emphasis added). The Federal Defendants' interests in this case are (1) defending the President's Proclamation creating the Ancestral Footprints Monument and (2) more broadly, defending the federal government's authority to reserve federal lands, including

5

under the Antiquities Act. The State and Governor share the former interest. But they also have distinct interests in preserving their ability to represent the interests of the State and its executive branch in federal court, and in preserving Arizona's separation of powers.

Because the State and Federal defendants have distinct constitutional interests, they will not "undoubtedly" make "all" the same arguments. Their arguments may overlap at times, but may differ regarding the defense of constitutional governance in Arizona. That the Federal Defendants must focus on other interests than the State and the Governor shows that their interests "may not always dictate precisely the same approach to the conduct of the litigation." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 539 (1972). This is "sufficient to warrant relief in the form of intervention." *Id.* And only the State and the Governor can authoritatively assert what their interests are and whether, in their view, the Monument injures the State. That alone is a sufficient reason for the Court to conclude that the federal government does not adequately represent Arizona's interests.

Supreme Court case law makes clear that adequacy of representation turns on the parties' interests in the litigation, not just the outcome they seek. For example, in *Trbovich*, the Court held that a union member could intervene as of right even though the Secretary of Labor was already a party and had the statutory duty to represent the union member's rights. *Id.* at 538-39. The Court reasoned that the Secretary had "two distinct interests, which are related, but not identical"—the duty to represent "individual union members" and the "obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* (cleaned up). Because these interests "may not always dictate precisely the same approach to the conduct of the litigation," the Court concluded that the union member was entitled to intervene. *Id.* at 539.

ASL Plaintiffs rely on *Oakland Bulk & Oversized Terminal, LLC*, 960 F.3d 603, 620 (9th Cir. 2020), but it does not help them. There, two environmental groups sought to intervene to defend a municipal Ordinance and Resolution that the enacting city

6

(Oakland) was already defending. The district court denied intervention as of right, but granted permissive intervention with limitations, including that the intervention was limited to "defending against the developer's claims and will not include the right to bring counterclaims [or] cross-claims." *Id.* at 619. Consistent with that limitation, the district court declined to consider an argument—that a section of the Ordinance conflicted with a California statute—which the intervenors had raised but Oakland had not. The Ninth Circuit affirmed. But the only part of the holding that the ASL Plaintiffs mention (at 6) in any detail was that the intervenors' narrower interests than Oakland's were not "alone" sufficient to justify intervention. *Id.* at 620. That holding is irrelevant here because the State and Governor have an interest that the Federal parties do not.

### B. The presumption of adequate representation is of questionable validity and, if it applies here, is rebutted.

The ASL Plaintiffs rely heavily on a "presumption" of adequate representation, which under Ninth Circuit case law attaches when a proposed intervenor seeks the same "ultimate objective" as an existing party. *E.g.*, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). That rule is of questionable validity in light of recent Supreme Court case law (as well as longstanding cases like *Trbovich*). But in any event, the State and the Governor do not share identical "ultimate objectives" here, and if they do the presumption is rebutted.

#### 1.     The presumption's legal viability is in doubt.

The Supreme Court has cast doubt on the viability of the presumption on which the ASL Plaintiffs lean, particularly as applied here. In *Berger*, the leaders of the North Carolina legislature, who were authorized under state law to speak for the state in federal court, sought to intervene in a suit against the Governor and the State Board of Elections. 597 U.S. at 186. In seeking to intervene, the legislative leaders pointed to the Governor's opposition to the challenged law, the Attorney General's opposition to earlier, similar laws, and the Governor's control over the Board. *Id.* at 186-87.

7

In concluding that the legislative leaders had the right to intervene, the Supreme Court discussed the importance of hearing from authorized voices within state government in federal court. *Id.* at 191. National interests are served by "respecting the States' plans for the distribution of governmental powers." *Id.* at 192 (cleaned up). The Court then called into question the use of presumptions against intervention. *Id.* at 195 ("[w]e cannot agree" with the lower court's use of a presumption against intervention).

The Court noted that in *Trbovich*, "the union member sought relief against his union, full stop; meanwhile, the Secretary also had to bear in mind broader public-policy implications." *Id.* at 196. "Rather than endorse a presumption of adequacy, the Court held that a movant's burden in circumstances like these 'should be treated as minimal.'" *Id.* And even if "a presumption of adequate representation remains appropriate in certain classes of cases," "none of these presumptions applies to cases like ours," in which the proposed intervenors are "*among* those [the State] has expressly authorized to participate in litigation to protect the State's interests." *Id.*; *see also id.* at 197 ("Any presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests.").

The Ninth Circuit has acknowledged that *Berger* "calls into question" the viability of the presumption when the parties share ultimate objectives but not identical interests. *Callahan v. Brookdale Senior Living Comtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022). The text of Rule 24(a)(2) also calls that presumption into question. After all, Rule 24 provides that intervention turns on whether the action may impair the movant's "interest" and existing parties do not adequately represent "that interest." Fed. R. Civ. P. 24(a)(2). The Rule says nothing about shared "ultimate objectives."

### 2. If the presumption is still viable, it does not apply. And if it applies, it is rebutted.

Even if the presumption survives *Berger*, it does not apply here because the Federal Defendants share only some of the State and Governor's "ultimate objectives." The State and Governor seek to protect their sovereign, statutory, and constitutional roles,

8

which are not "ultimate objectives" of the Federal Defendants. That is why the Federal Defendants challenge the standing of all plaintiffs, while the State and Governor challenge only that of the ASL Plaintiffs.

Moreover, even assuming that the presumption survives *Berger* and applies here, the State and Governor easily rebut it by making the necessary "compelling showing of inadequacy of representation." *Citizens for Balanced Use*, 647 F.3d at 899 (quotation marks omitted). As discussed, the State and Governor seek to protect Arizona's constitutional order, which is not the focus of the Federal Defendants. This is "more than a mere difference in litigation strategy." *Id.* It is a "fundamentally differing point[] of view." *Id.* And when an intervenor has a "fundamentally differing point of view" from the existing parties, then the existing parties do not adequately represent the intervenor's interests, even if they do seek the same ultimate objective. *Id.*

**III.    The supposed inconsistencies do not help the ASL Plaintiffs.**

The ASL Plaintiffs' claimed "internal inconsistenc[ies]" in the motion only further prove the point. Doc. 55 at 8. The ASL Plaintiffs assert that the Governor's joining in the intervention motion indicates "that other state officials may litigate issues relating to the Proclamation in federal court." *Id.* But the Governor is litigating her own interest in her powers and duties, not the State's separate interests.

The allegation that the "Attorney General and Governor repeatedly assert claims they argue belong to the State Land Department, which did not join their motion," likewise lacks any persuasive force here. *Id.* at 9 (citation omitted). First, the State and Governor seek to intervene as defendants, not to bring a claim of injury. Second, when the ASL Plaintiffs seek to litigate a claim belonging to the Land Department, the Governor's ability to, through that department, set trust policy is put at issue. Moreover, the motion to intervene expressly noted (at 1 n.2) that the Land Department agreed with the motion to intervene and proposed motion to dismiss.

Finally, in claiming an "inconsistency with past positions," the ASL Plaintiffs ignore critical differences between the present case and prior ones. Doc. 55 at 9. In

9

*Isaacson v. Mayes*, for example, the Attorney General did not oppose intervention by President Petersen and Speaker Toma. *See* Resp. to Mot. to Intervene, Doc. 160, at 2, CV-21-01417-DLR (D. Ariz. Feb. 17, 2023). But there, the legislative leaders were intervening to defend a state law pursuant to a specific grant of statutory authority. *See* A.R.S. § 12-1841(D). No such authority exists to bring the claims here.

In *Mecinas v. Hobbs*, then-Secretary Hobbs objected to the State's intervention. *See* Resp. to Mot. to Intervene, 20-16301, Doc. 62 (9th Cir. May 2, 2022). But that case was more than two years old and in a post-judgment, post-appeal posture. Moreover, the Secretary also objected because the Attorney General had represented her in the same action. *Id.* at 6 n.1. And critically, the State sought to intervene on the same side as the Secretary to assert largely the same position. That is a far cry from what we have here, where the ASL Plaintiffs are treating as harms that which the State sees as a benefit.

Finally, *Arizona Democratic Party v. Hobbs* presented the inverse circumstance to this case. *See* Resp. to Mot. to Intervene, Doc. 26, at 2, CV-20-01143-DLR (D. Ariz. June 19, 2020). There, then-Secretary Hobbs objected to the State intervening, where the Attorney General, on behalf of the State, sought intervention because he did not agree with the way the Secretary discharged her office. *Id.* at 2, 3. Here, the ASL Plaintiffs filed suit precisely because they do not agree with the way the Governor (and seemingly others) have discharged their offices. *See* Compl. ¶ 191(h); Doc. 50 at 11. Just as that belief was a poor reason to interfere in litigation in *Arizona Democratic Party*, so too is it a poor reason to claim authority to litigate the State's and executive branch's alleged injuries while representing neither and seeking to exclude both from the litigation.

**IV.   Permissive intervention is appropriate.**

The ASL Plaintiffs do not dispute that the "baseline requirements" for permissive intervention are satisfied. Instead, they ask the court to exercise its discretion to deny permissive intervention. The minimal burdens discussed by the ASL Plaintiffs—responding to additional briefing, scheduling difficulties, reaching stipulations, and so on—do not outweigh the fundamental point that if the ASL Plaintiffs wish to assert the

State's and executive branch's injuries, then the State and the Governor should be heard. This would be true if the State and Governor were ordinary parties, and is only truer where the State appears with the "dignity" of a sovereign, *Massachusetts*, 549 U.S. at 519, and the Governor seeks to represent the views of an independent branch of state government.

Simply hearing from the State and Governor as amici, as the ASL Plaintiffs suggest, is not enough. *See City of L.A.*, 288 F.3d at 400 (explaining differences between intervention and amicus status). Only as parties can the State and Governor ensure that their interests remain part of the litigation at all stages, including on appeal, until the questions that arise from their interests are finally decided.[2]

## V. The State and Governor are amenable to conditions on their intervention.

As to the conditions the ASL Plaintiffs suggest, Doc. 55 at 11-12, the State and Governor do not object to the first—imposing a meet and confer requirement with Federal Defendants and other intervenors. The State and Governor object to the second—barring them from "raising dispositive arguments beyond those asserted in the motion to dismiss attached to their motion to intervene." Doc. 55 at 12. While the State and Governor do not object to limiting their intervention to the purpose of arguing standing, they may wish to present new arguments on standing at the summary judgment stage, following jurisdictional discovery. Moreover, as the State and Governor noted in their motion, while they "do not believe intervention on the merits is needed at this time," circumstances could change. *See* Doc. 50 at 1 n.1. And on the third proposed condition—barring the State and Governor from propounding any discovery without prior approval from the Court—the State and Governor propose instead that their discovery be limited to jurisdictional discovery, if any discovery restriction is going to be imposed.

## CONCLUSION

The Court should grant the motion to intervene.

---

[2] To the extent this Court disagrees that intervention is appropriate, the State and Governor ask this Court to treat their lodged motion to dismiss, Ex. A to Doc. 50, as an amicus curiae brief.

RESPECTFULLY SUBMITTED this 1st day of July, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By /s/ Joshua D. Bendor
　　Joshua D. Bendor
　　*Solicitor General*
　　Alexander W. Samuels
　　*Principal Deputy Solicitor General*
　　Office of the Arizona Attorney General
　　2005 North Central Avenue
　　Phoenix, Arizona 85004-1592

*Attorneys for Proposed Intervenor-Defendant*
　　*State of Arizona*

By /s/ Sambo (Bo) Dul (with permission)
　　Sambo (Bo) Dul
　　*General Counsel*
　　Sean Berens
　　*Deputy General Counsel*
　　Office of the Arizona Governor
　　1700 West Washington Street, 9th Floor
　　Phoenix, Arizona 85004

*Attorneys for Proposed Intervenor-Defendant*
　　*Arizona Governor Katie Hobbs*