IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona State Legislature, et al., | No. CV-24-08026-PCT-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Joseph R Biden, Jr., et al., | |
| Defendants. | |

This matter is before the Court on four Motions to Intervene filed by three groups of proposed intervenors ("Proposed Intervenors"). (Docs. 13, 36, 38, 50). The first Motion was filed by the Navajo Nation, the Hopi Tribe, and the Havasupai Tribe (collectively, "Tribal Nations"). (Doc. 13). The second and third Motions to Intervene—filed separately for the two cases which are now consolidated into this action—were filed by ten conservation groups, comprised of the Grand Canyon Trust, Center for Biological Diversity, Great Old Broads for Wilderness, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, The Wilderness Society, Western Watersheds Project, Wild Arizona, and WildEarth Guardians (collectively, "Conservation Intervenors"). (Docs. 36, 38). The final Motion to Intervene was filed by the State of Arizona and Governor Katie Hobbs ("State Intervenors" or "State and Governor of Arizona"). (Doc. 50). Plaintiffs Arizona State Legislature, Kimberly Yee, Mohave County, Colorado City, and Town of Fredonia (collectively, "Legislature Plaintiffs") oppose each of the Proposed Intervenors' Motions. (Docs. 42, 43, 55). Plaintiff Chris

Heaton ("Individual Plaintiff") joined in the Legislature Plaintiffs' opposition to the Conservation Intervenors' Motion. (Doc. 43). Defendants ("the United States") take no position on the Motions. (Doc. 40). For the following reasons, the Court denies the Motions to Intervene filed by Tribal Nations and Conservation Intervenors and grants the Motion filed by State Intervenors.

**I.     BACKGROUND**

On August 8, 2023, President Joseph R. Biden established the Baaj Nwaavjo I'tah Kukveni – Ancestral Footprints of the Grand Canyon National Monument ("Ancestral Footprints National Monument" or "the Monument") via Proclamation 10606 (the "Proclamation"). 88 Fed. Reg. 55,331 (Aug. 8, 2023). The Proclamation reserved approximately 917,618 acres of land in Northern Arizona for the Monument, restricting development and mining of the land.[1] (Doc. 1 at 3, 23). Legislature Plaintiffs filed this action on February 12, 2024, alleging that Proclamation 10606 exceeds President Biden's authority to designate national monuments under the Antiquities Act of 1906; alternatively, to the extent that the Antiquities Act authorizes such delegations, Legislature Plaintiffs argue that the Antiquities Act is unconstitutional. (Id. at 1, 45). Legislature Plaintiffs also argue that the National Monument conflicts with the Arizona Wilderness Act of 1984 because certain lands designated as wilderness under the Arizona Wilderness Act are encompassed by the Ancestral Footprints National Monument. (Id. at 47).

Individual Plaintiff filed a separate action in this district on the same day as Legislature Plaintiffs—February 12, 2024—alleging parallel claims against many of the same federal Defendants. See CV-24-8026-PHX-DLR. Defendants filed a Motion to Consolidate this action with the action brought by Individual Plaintiff. (Doc. 12). Before the Court ruled on the Motion to Consolidate, Tribal Nations and Conservation Intervenors filed Motions to Intervene in this action. (Docs. 13, 16). The Court granted

---

[1] As Proclamation 10606 is highly relevant to the subject of this litigation and is not subject to reasonable dispute, the Court takes judicial notice of the Proclamation and its contents. In taking judicial notice of the Proclamation, however, the Court does not take judicial notice of the truth of the facts asserted therein.

the Motion and consolidated this action on April 30, 2024. (Doc. 31). Conservation Intervenors re-filed Motions to Intervene for the consolidated actions on May 2, 2024. (Docs. 36, 38). On June 10, 2024, the State and Governor of Arizona filed a Motion to Intervene. (Doc. 50). All Motions are fully briefed.

## II.   LEGAL STANDARD

### a. Intervention as of right under Rule 24(a)

Pursuant to Federal Rule of Civil Procedure 24(a), the Court must allow intervention as of right in an action if Proposed Intervenors (1) timely move to intervene, (2) have a significantly protectable interest in the subject of the action, (3) are situated such that disposition of the action may impair their ability to protect that interest, and (4) are not adequately represented by existing parties. W. Watersheds Project v. Haaland, 22 F.4th 828, 836 (9th Cir. 2022), citing Oakland Bulk & Oversized Terminal, LLC v. City of Oakland, 960 F.3d 603, 620 (9th Cir. 2020). Proposed Intervenors bear the burden of proving that the requirements of Rule 24(a) are met. Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir. 2011). Failure to satisfy any element of the four-part test is fatal to the intervention application. Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009). However, the Court construes Rule 24(a) broadly in favor of Proposed Intervenors. Callahan v. Brookdale Senior Living Communities, 42 F.4th 1013, 1020 (9th Cir. 2022).

In evaluating whether a motion to intervene is timely, the Court considers "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." Orange Cnty. v. Air Cal., 799 F.2d 535, 537 (9th Cir. 1986), citing United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984).

The second element—whether an applicant has a significantly protectable interest in the subject of the action—requires the applicant to show 1) that it has an interest that is protected under some law, and 2) that "there is a 'relationship' between its legally protected interest and the plaintiff's claims. The relationship requirement is met if

resolution of the plaintiff's claims actually will affect the applicant." In re Estate of Ferdinand E. Marcos Hum. Rights Litig., 536 F.3d 980, 985 (9th Cir. 2008).

Under the third element, if an applicant "would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene." Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). If the other three factors are satisfied, courts often "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" a proposed intervenor's interests. California ex rel. Lockyer v. United States, 450 F.3d 436, 442 (9th Cir. 2006).

The fourth and final element is met if Proposed Intervenors are not adequately represented by existing parties to the lawsuit. "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties." Perry, 587 F.3d at 950–51 (quoting Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). In evaluating the adequacy of existing representation, courts "examine three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Citizens for Balanced Use, 647 F.3d at 898. There is presumption of adequate representation where an existing party and a Proposed Intervenor share the same objective or where "the government is acting on behalf of a constituency that it represents." Arakaki, 324 F.3d at 1086 (internal citations omitted). Where the Proposed Intervenor and the party share the same objective, the intervenor must rebut that presumption with a "compelling showing" to the contrary. Id.

### b. Permissive intervention under Rule 24(b)

Federal Rule of Civil Procedure 24(b) provides for permissive intervention. The Court may, in its discretion, allow intervention if the Proposed Intervenor "presents '(1)

an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" Callahan, 42 F.4th at 1022 (quoting Freedom from Religion Found., Inc. v. Geithner, 644 F.3d 836, 843 (9th Cir. 2011)). The Court also considers whether intervention will delay or prejudice the adjudication of the original parties' rights. Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 741 (9th Cir. 2011). The Court has broad discretion over whether to allow permissive intervention and "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." Donnelly v. Glickman, 159 F.3d 405, 415 (9th Cir. 1998).

## III.  INTERVENTION MOTIONS

The Court addresses the Motions to Intervene in the order in which they were filed, beginning with Tribal Nations' Motion, (Doc. 13), and concluding with the State and Governor of Arizona's Motion. (Doc. 50).

### a. Tribal Nations Intervenors' Motion

#### i. Intervention as of right

Tribal Nations seek to intervene as of right for the limited purpose of filing a Rule 12(b)(7) Motion to Dismiss on the basis that Tribal Nations are necessary parties to this suit but unable to be joined under Rule 19 due to Tribal Nations' sovereign immunity. (Docs. 13, 14). Legislature Plaintiffs argue that Tribal Nations have waived any argument as to sovereign immunity by virtue of Tribal Nations' Motion to Intervene filed in the action brought by Individual Plaintiff prior to the consolidation of this action. In Tribal Nations' Reply in support of their Motion to Intervene, Tribal Nations argue that the action brought by Legislature Plaintiffs made Tribal Nations necessary parties to the action under Rule 19, whereas Individual Plaintiff's action did not. Tribal Nations thus moved to intervene generally in Individual Plaintiff's action prior to the consolidation. However, Tribal Nations assert that their sovereign immunity has not been waived by virtue of Tribal Nations' position in Individual Plaintiff's action prior to consolidation.

The Court finds that Tribal Nations' attempt to intervene generally in the second action does not waive Tribal Nations' sovereign immunity as to the consolidated action. Where Tribal Nations may be necessary parties to an action and that action is then consolidated with a second action in which Tribal Nations are entitled to intervene but *not* necessary parties, Tribal Nations are logically necessary parties to the consolidated action and entitled to make any Rule 19(b) arguments that may arise.

### 1. Timeliness of motion

In support of the timeliness of the Tribal Nations' Motion, the Tribal Nations state that the Motion was filed 10 weeks after the action commenced and prior to any responsive pleading by the United States. (Doc. 13 at 5). As such, intervention would not prejudice either party. (Id.) Legislature Plaintiffs do not contest the timeliness of the Tribal Nations' Motion. Accordingly, the Court finds that the Tribal Nation Intervenors' Motion is timely.

### 2. Significantly protectable interest

The second factor—whether the applicant has demonstrated a significantly protectable interest—requires more so a factual inquiry than a legal inquiry; "no specific legal or equitable interest need be established." Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir. 2011). The Tribal Nations assert a significantly protectable interest in the Monument because the lands comprising the Monument are within the homelands of the Tribal Nations and the Tribal Nations were involved in advocating for the Monument's creation. (Doc. 13 at 6). The Tribal Nations also assert that they are members of the Grand Canyon Tribal Coalition, which advocated for the creation of the Monument as well. (Id. at 7). Finally, the Tribal Nations point to the Proclamation establishing the Monument, which created a Commission to promote co-management of the Monument and ensure the participation of the Tribal Nations on the case and management of the Monument. (Id.)

Legislature Plaintiffs do not contest whether Tribal Nations have established a significantly protectable interest in the Monument. As such, the Court finds that Tribal

Nations have demonstrated a significantly protectable interest in the subject of this litigation.

3. Practical impairment of interest

The third factor requires the applicant to show that disposition of the action could impair or impede the applicant's interests. See Berg, 268 F.3d at 822. Tribal Nations argue that disposition of this action would affect Tribal Nations' sovereign interest in managing their ancestral lands. (Doc. 13 at 9). Tribal Nations point to the Proclamation's establishment of the Tribal Commission, as well as Plaintiffs' arguments that the Antiquities Act does not permit the President to allow tribal co-management of Monument land. (Id.) Plaintiffs do not contest that Tribal Nations' interests may be practically impaired by disposition of this action. The Court finds that Tribal Nations have demonstrated the third factor.

4. Adequacy of existing representation

The final element requires the applicant to show that existing representation may be inadequate. Tribal Nations argue that the burden of establishing inadequate representation by existing parties is minimal and is satisfied if proposed intervenors establish that representation of their interests "may be" inadequate. (Doc. 13 at 10), citing Citizens for Balanced Use, 647 F.3d at 898. Tribal Nations argue that the generalized public interests of the United States in defending the Monument do not adequately represent the interests of Tribal Nations, which "are grounded in their ancestral relationship to the region and their decades-long efforts to protect these lands. (Doc. 13 at 11).

Generally, "[t]he United States may adequately represent an Indian tribe unless there is a conflict between the United States and the tribe." Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990).[2] A conflict of interest may be found where there are divergent interests at stake among or between tribes and the United States that render the

---

[2] Makah and the following cases pertain to Rule 19(b) rather than Rule 24(a); however, the adequacy of representation analysis is functionally the same under both Rules. See Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992).

United States unable to carry out its trust obligations. See Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992). In Klamath Irrigation District v. Bureau of Reclamation, the Ninth Circuit took a nuanced approach to the analysis and found that the government agency's and tribes' "interests, though overlapping, are not so aligned as to make [the agency] an adequate representative of the Tribes." 48 F. 4th 934, 945 (9th Cir. 2022). As the Ninth Circuit stated in that instance, "a unity of some interests does not equal a unity of all interests." Id.

By contrast, in Southwest Center for Biological View v. Babbitt, the Ninth Circuit found that the shared interests of the government and the Indian community in defeating the lawsuit on the merits meant that the Indian community would be adequately represented by the government. 150 F.3d 1152, 1154 (9th Cir. 1998); see also Alto v. Black, 738 F.3d 1111, 1127 (9th Cir. 2013) (finding that United States adequately represented tribe's interests)..

While this issue presents a close call, the Court finds no conflict of interests here which would prevent the United States from adequately representing Tribal Nations. Several circumstances of this case guide the Court's finding that this case is more similar to Southwest Center than to Klamath Irrigation District. As the Tribal Nations argue elsewhere in their Motion, Tribal Nations were extensively involved in advocating for the Monument's creation, and the Proclamation establishing the Monument recognized that the lands are sacred to Tribal Nations and recognized that Tribal Nations would play a part in the collaborative management of the Monument. The Proclamation itself is thus strong evidence that, as pertains to the Monument, the interests of the United States and Tribal Nations are especially aligned. See 88 Fed. Reg. 55,331. This is distinguishable from Klamath Irrigation District, where the Ninth Circuit found that the United States' interests were primarily in fulfilling its legal obligations to comply with the Endangered Species Act and Administrative Procedures Act; here, the United States was under no legal obligation to create the Monument.

Tribal Nations argue that "the United States cannot adequately represent Tribal Nations' interests where the Tribal Nations hold sovereign interests in the outcome of the litigation not shared by the United States." (Doc. 13 at 10), citing Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs, 932 F.3d 843, 855 (9th Cir. 2019). However, the sovereign interests implicated in Diné Citizens are distinguishable from Tribal Nations' interests in this action; Diné Citizens concerned the operation of the Navajo Nation's wholly owned mining corporation on Navajo Nation lands. The Ninth Circuit observed that "[t]he Navajo Nation's interest is tied to its very ability to govern itself, sustain itself financially, and make decisions about its own natural resources." Id. at 856. While, as the Court has already concluded, Tribal Nations have a significantly protectable interest in this action, the Court cannot conclude here that the interest is a sovereign interest, as articulated in Diné Citizens, such that the United States is unable to adequately represent Tribal Nations' interests.

Without further elaboration on the potential for the interests of the Tribal Nations and the United States to diverge, the mere possibility that the interest of the United States and Tribal Nations may diverge in the future is insufficient to conclude, at this stage, that Tribal Nations are inadequately represented. Tribal Nations have not made a compelling showing of inadequate representation. Accordingly, the Court finds that the Tribal Nations have failed to overcome the presumption of adequate representation and denies the Tribal Nations' Motion to Intervene as of right under Rule 24(a).

### ii. Permissive intervention

The Court may, in its discretion, grant an applicant permissive intervention under Federal Rule of Civil Procedure 24(b). The Court's authority to grant permissive intervention "includes discretion to limit intervention to particular issues." Van Hoomissen v. Xerox Corp., 497 F.2d 180, 181 (9th Cir. 1974). Tribal Nations seek to intervene in this action for the limited purpose of filing a Rule 12(b)(7) Motion to Dismiss for failure to join necessary parties under Rule 19. (Doc. 13 at 14). Tribal

Nations argue that their motion is timely and no prejudice will result from granting intervention. (Id.)

The Court exercises its discretion to deny permissive intervention to Tribal Nations at this time. In order for Tribal Nations' Rule 12(b)(7) Motion to succeed, Tribal Nations must show that their interests are not adequately represented by existing parties. However, because the Court has already determined that the United States adequately represents Tribal Nations in the context of Rule 24, Tribal Nations' Motion to Dismiss may be foreclosed on this basis. Accordingly, the Court declines to permit Tribal Nations to intervene for the purposes of filing the Rule 12(b)(7) Motion to Dismiss as lodged. Should the position of the United States change during the course of this litigation such that Tribal Nations' interests diverge from the United States, Tribal Nations may re-raise their Motion to Intervene.

### b. Conservation Intervenors' Motion
#### i. Intervention as of right

Conservation Intervenors, comprised of Grand Canyon Trust, Center for Biological Diversity, Great Old Broads for Wilderness, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, The Wilderness Society, Western Watersheds Project, Wild Arizona, and WildEarth Guardians, move to intervene as of right pursuant to Rule 24(a) or, in the alternative, for Rule 24(b) permissive intervention. Conservation Intervenors were involved in advocating for the creation of the Monument and now seek to defend the constitutionality of the Monument alongside the United States.

1. Timeliness of motion

Conservation Intervenors originally moved to intervene on April 24, 2024 and filed amended pleadings on May 2, 2024, prior to any responsive pleading by the United States. (Docs. 16, 36–38). Legislature Plaintiffs and Individual Plaintiff do not contest the timeliness of Conservation Intervenors' Motion. (Doc. 43). As such, the Court finds that Conservation Intervenors' Motion was timely filed.

2. Significantly protectable interest

The Ninth Circuit has regularly found that conservation groups enjoy a legally protected interest in the preservation of wilderness areas for the use of the groups' members. See Citizens for Balanced Use, 647 F.3d at 897–98; see also United States v. Carpenter, 526 F.3d 1237, 1240 (9th Cir. 2008) (noting prior opinion that found that intervenor environmental groups "had the requisite interest in seeing that the wilderness area be preserved for the use and enjoyment of their members."). Legislature Plaintiffs and Individual Plaintiffs raise no arguments as to whether Conservation Intervenors have a legally protectable interest in this action. (Doc. 43). Accordingly, pursuant to Conservation Intervenors' arguments and circuit precedent, the Court finds that Conservation Intervenors have a significantly protectable interest in this action.

3. Practical impairment of interest

Conservation Intervenors allege that the disposition of this action may impair Conservation Intervenors' interests the Monument's preservation by eliminating or diminishing the Monument. (Doc. 37 at 15). Plaintiffs raise no arguments as to this element. Accordingly, the Court concludes that Conservation Intervenors have shown that disposition of this action may impair or impede their interest in the Monument's protection.

4. Adequacy of existing representation

The fourth and final element requires Conservation Intervenors to show that their interests will be inadequately represented by the current parties to the litigation.

The presumption of adequacy of representation applies here as the United States is a party to this action. Arakaki, 324 F. 3d at 1086 ("There is [] an assumption of adequacy when the government is acting on behalf of a constituency that it represents."). "Thus, for example, in the absence of a very compelling showing to the contrary, it will be assumed that the United States adequately represents the public interest in . . . environmental litigation, and in a variety of other matters." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 1909 (3d ed. 2024).

1    Conservation Intervenors argue that the prior litigation history of several of the
2 Conservation Intervenors, which is or has been adverse to the United States in similar
3 cases, compels a finding that the Conservation Intervenors and the United States have
4 differing interests despite sharing the same objective here. (Doc. 37 at 18). Conservation
5 Intervenors cite to Idaho Farm Bureau Fed'n v. Babbitt for this proposition, in which the
6 Ninth Circuit found that the United States would not have adequately represented the
7 proposed intervenors' interests where the proposed intervenors' prior litigation against
8 the United States had led to the challenged decision. 58 F.3d 1392, 1397 (9th Cir. 1994).
9 In addition, Conservation Intervenors cite to a district court decision from this circuit in
10 which the court found that the proposed intervenors' history of advocacy and litigation
11 against the United States rebutted the presumption of adequate representation. See Alaska
12 v. Nat'l Marine Fisheries Serv., 3:22-cv-00249-JMK, 2023 WL 2789352, at *9 (D.
13 Alaska Apr. 5, 2023).

14    However, Idaho Farm Bureau does not compel the conclusion that adverse
15 litigation history in similar cases is sufficient to overcome the presumption of adequacy
16 of representation when the subject matter of the litigation differs. In Idaho Farm Bureau
17 as well as Alaska, the conservation groups which sought to intervene had taken positions
18 adverse to the United States or taken efforts to compel the United States to act on the
19 very subject matter of the litigation. See 58 F. 3d at 899; see also 2023 WL 2789352, at
20 *9 ("Were it not for the [conservation intervenor's] extensive advocacy and litigation
21 efforts, [the National Marine Fisheries Service] in all likelihood would not have listed the
22 species and designated critical habitat when it did."). Conservation Intervenors identify
23 no advocacy or litigation efforts against the United States relating to the establishment of
24 the Ancestral Footprints National Monument. Accordingly, the Court cannot conclude
25 that Conservation Intervenors' interests will be inadequately represented by the United
26 States when their objectives presently align.

27 ///

28 ///

### ii. Permissive Intervention

Conservation Intervenors request, in the alternative to Rule 24(a) intervention, to intervene permissively under Rule 24(b). (Doc. 37 at 20). Conservation Intervenors attest that they will present a defense that shares common issues or law and fact with the main action and will likely advance different and narrower arguments than the United States. (Id. at 21). Conservation Intervenors aver that no prejudice will be caused to the existing parties and Conservation Intervenors will coordinate with the other Defendants in this action to achieve an efficient resolution. (Id.)

The Court will exercise its discretion to deny permissive intervention to Conservation Intervenors at this time. Because the United States adequately represents Conservation Intervenors' interests in this action, the Court finds that Conservation Intervenors' presence as Defendants in this action would be unnecessary at this time. However, the Court is cognizant that the position of the United States may change throughout the course of this litigation such that the United States no longer adequately represents Conservation Intervenors' interests. Should the position of the United States materially change during this litigation, Conservation Intervenors may re-raise their Motion to Intervene.

### c. State Intervenors' Motion

Governor Katie Hobbs and the State of Arizona through Attorney General Kris Mayes ("State Intervenors") filed a Motion to Intervene on June 10, 2024. (Doc. 50). State Intervenors move to intervene as of right in this action because the State does not share Legislature Plaintiffs' viewpoint as to the Monument's impact on the State and its trust lands. (Id. at 2). State Intervenors further argue that Legislature Plaintiffs lack the standing to bring the claims asserted in this action because the harms alleged are either speculative, constitute generalized grievances, or belong to the State itself—not Legislature Plaintiffs. (Id.)

///

///

### i. Timeliness of motion

State Intervenors' Motion was filed after the United States' Motion to Dismiss but prior to Plaintiffs' Response. (Docs. 50, 49, 63). Legislature Plaintiffs do not contest the timeliness of State Intervenors' Motion. (Doc. 55). Accordingly, the Court finds State Intervenors' Motion to Intervene to be timely; the stage of the proceedings was yet early when the Motion was filed and no prejudice to the parties is apparent. See Idaho Farm Bureau, 58 F.3d at 1397 (finding motion to intervene timely when filed four months after commencement of action and prior to any rulings on substantive matters).

### ii. Significantly protectable interest

State Intervenors seek to intervene in order to assert the State's sovereign interest in litigating in its own name on matters in which the State has a fiduciary and trustee interest. (Doc. 50 at 7–10). State Intervenors assert that Legislature Plaintiffs do not represent the State and are not empowered to assert harms to the State writ large. (Id. at 8). State Intervenors argue that Legislature Plaintiffs have made the State's interest in administering its trust land directly relevant to the subject matter of this action. (Id. at 10).

In opposition, Legislature Plaintiffs argue that no relationship exists between State Intervenors' asserted interests and Legislature Plaintiffs' claims that the federal government overstepped its authority. (Doc. 55 at 7). The argument that Legislature Plaintiffs' interests in this action are implicated by the creation of the Monument but the State's interests are not is creative; however, it withstands little scrutiny. The Court finds that State Intervenors have demonstrated a significantly protectable interest in asserting the State's position on the subject matter of this litigation.

### iii. Practical impairment of interest

State Intervenors assert that the State's interest in administering trust land would be negatively impaired by allowing Legislature Plaintiffs to purport to act as trustee over State trust land and by allowing Legislature Plaintiffs to determine what injures or aids the trust. (Doc. 50 at 10). Legislature Plaintiffs argue, in response, that resolution of

claims relating to the federal government's authority would not impair or impede State Intervenors' claims interests. The Court finds that State Intervenors have shown that resolution of this action in the State's absence would impair State Intervenors' interests.

### iv. Adequacy of existing representation

State Intervenors argue that existing parties do not adequately represent State Intervenors' interests because the United States is tasked with defending the federal government's authority to declare the Monument, not defending State Intervenors' interests in litigating in the State's own name. (Doc. 50 at 11–12). As such, State Intervenors argue, the interests of the United States and State Intervenors in this action differ significantly.

Legislature Plaintiffs argue that State Intervenors have not rebutted the presumption of adequate representation that applies when the federal government is a party. Legislature Plaintiffs proffer that the United States has already made all of State Intervenors' arguments. (Doc. 55 at 4). The Court disagrees. While the United States has indeed moved to dismiss this action based on standing, the interests advanced by State Intervenors pertain to the State's ability to litigate in its own name; those same interests are not shared by the United States, which must defend the constitutionality of the Monument on a broader scale. The arguments that State Intervenors may advance on this matter may differ significantly from the United States due to this lack of overlap in shared interests. As such, State Intervenors have shown that representation by existing parties would be inadequate. The Court grants State Intervenors' Motion to Intervene under Rule 24(a). (Doc. 50).

### IV. CONCLUSION

The Court finds that Tribal Nations and Conservation Intervenors have not made a compelling showing that the United States inadequately represents their interests in this action; as such, the Court denies the Motions to Intervene filed by Tribal Nations and Conservation Intervenors. (Docs. 13, 36, 38). The Court finds that State Intervenors have

met the standard under Rule 24(a) for intervention as of right and grants State Intervenors' Motion. (Doc. 50).

Accordingly,

**IT IS ORDERED denying without prejudice** Tribal Nations' Motion to Intervene. (Doc. 13).

**IT IS FURTHER ORDERED denying without prejudice** Conservation Intervenors' Motions to Intervene. (Docs. 36, 38).

**IT IS FURTHER ORDERED granting** State Intervenors' Motion to Intervene. (Doc. 50). The State of Arizona and Governor Katie Hobbs are joined as Intervenor Defendants in this action.

Dated this 9th day of September, 2024.

Honorable Stephen M. McNamee
Senior United States District Judge