**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
ACL@azag.gov

*Attorneys for Intervenor-Defendant State of Arizona*

Sambo (Bo) Dul (030313)
Sean Berens (034302)
Office of Arizona Governor Katie Hobbs
1700 West Washington Street, 9th Floor
Phoenix, Arizona 85004
T: (602) 542-6578
bdul@az.gov
sberens@az.gov

*Attorneys for Intervenor-Defendant Arizona Governor Katie Hobbs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona State Legislature, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Joseph R. Biden, Jr., et al.,<br><br>    Defendants. | No. 3:24-cv-08026-PCT-SMM<br>*consolidated with*<br>3:24-cv-08027-PHX-DLR<br><br><br>**STATE AND GOVERNOR OF ARIZONA'S MOTION TO DISMISS** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Intervenor-Defendants Governor Katie Hobbs and the State of Arizona move to dismiss the Complaint filed by the Legislature, State Treasurer, Mohave County, Colorado City, and Fredonia's (collectively, "ASL Plaintiffs").

**INTRODUCTION**

Arizona is known around the world as the "Grand Canyon State." As Arizona's namesake, the Grand Canyon is a Natural Wonder of the World, a sacred place for Indigenous Peoples, a significant contributor to Arizona's economy through tourism, a creator of thousands of jobs, and a place where millions hike, hunt, fish, pray, meditate, camp, and enjoy the natural world. Its importance reaches far beyond the boundaries of our State and its name is carried in hearts and minds around the globe. The federal government has protected the area around the Grand Canyon in various ways for more than a century, since President Roosevelt used his power under the Antiquities Act to designate the Canyon a national monument in 1908.

In August 2023—with the support of Arizona Governor Katie Hobbs, tribal leaders, and other stakeholders across Arizona—President Biden established the Baaj Nwaavjo I'tai Kukveni-Ancestral Footprints of the Grand Canyon National Monument (the "Ancestral Footprints Monument" or the "Monument"), protecting nearly one million acres of public lands surrounding Grand Canyon National Park. The Monument's name reflects the Havasupai and Hopi heritage of the area, dating to long before Arizona was even a territory.

Highlighting the area's rich history and its cultural, economic, and scientific importance to the State of Arizona, Governor Hobbs wrote to President Biden in May 2023, encouraging the establishment of the Ancestral Footprints Monument. The State and the Governor, as the State's chief executive, have concluded that establishment of the Ancestral Footprints Monument benefits Arizona. And the Arizona State Land Department—the only state actor statutorily authorized to manage State Trust Land,

including initiating litigation to protect the land and its revenues—does not believe establishment of the Monument negatively impacts State Trust Land.

Nonetheless, without consulting with or even speaking to the Governor, the Attorney General, or any relevant State agencies, the ASL Plaintiffs sued the Biden Administration for establishing the Ancestral Footprints Monument. But the Legislature does not speak for the State of Arizona and it cannot purport to represent the State's interests before this Court. Moreover, nothing in the ASL Plaintiffs' Complaint establishes actual injuries sufficient to confer Article III standing.

Contrary to the allegations in the Complaint, the Monument does not encumber State Trust Land, and the alleged impacts on mining activity, state and local revenue, and the State's energy supply are speculative at best. Because the Complaint fails to identify a single, particularized harm that any Plaintiff has suffered or might imminently suffer due to the Monument's designation, the ASL Plaintiffs lack standing and their claims are not properly before this Court. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(1), Governor Hobbs and the State respectfully request the Court dismiss the ASL Plaintiffs' Complaint with prejudice.

## BACKGROUND

### I.     Designation of the Ancestral Footprints Monument

The area around Grand Canyon National Park is made up of both state and federal land. Through various legislative and administrative actions, the federal government has protected federal land in the area since before Arizona became a state. The Grand Canyon—which itself comprises more than a million acres—was first designated as a national monument by President Theodore Roosevelt in 1908. *See* Proclamation No. 794, 35 Stat. 2175 (Jan. 11, 1908). Congress later established the Grand Canyon as a national park in 1919. *See* 40 Stat. 1175 (1919).

In more recent history, President Ronald Reagan signed the Arizona Wilderness Act of 1984, which withdrew large swaths of federal land around the Grand Canyon and the Kaibab National Forest to preserve as wilderness areas.[1] Arizona Wilderness Act of 1984, Pub. L. No. 98–406, 98 Stat. 1485. The government withdrew more of its land for wilderness conservation in the same area over the course of several decades and, in 2012, withdrew more than one million acres for 20 years under the General Mining Law, restricting mining activity in that area until 2032. *See* 77 Fed. Reg. 2563 (withdrawing federal land in Coconino and Mohave Counties "to protect the Grand Canyon Watershed from adverse effects of locatable mineral exploration and development").

In May 2023, Governor Hobbs wrote to President Biden, U.S. Secretary of the Interior Deb Haaland, and U.S. Secretary of the Interior Thomas Vilsack, encouraging the Administration to establish a national monument on additional federal land around the Grand Canyon. Compl. ¶ 191(h). Governor Hobbs highlighted the Grand Canyon's importance for Arizona in her letter: The Grand Canyon provides nearly 10,000 jobs and is a huge economic contributor through tourism; it contains multitudes of history and heritage for the tribes that have inhabited the area for centuries; it is an important ecosystem; and it provides millions of people with natural space to recreate. *Id*.

On August 8, 2023, President Biden declared the federal land surrounding the Grand Canyon to be a national monument. Compl. ¶ 134. The Proclamation establishing the Monument is detailed, describing specific reasons why the area must be preserved. Establishment of the Baaj Nwaavjo I'tah Kukveni–Ancestral Footprints of the Grand Canyon National Monument, 88 Fed. Reg. 55331 ("Proclamation").

---

[1] *See* United States' Motion to Dismiss at pp. 3-4, ECF No. 49 (describing how the federal government may "reserve" or "withdraw" lands from general land laws).

- 3 -

II.      **State Trust Lands and the Monument Designation**

The Arizona State Land Department (the "State Land Department" or the "Department"), a state executive branch agency whose head serves at the direction and pleasure of the Governor, administers all laws relating to land owned by the State and has "charge and control" of State Trust Land.[2] A.R.S. § 37-102(A)-(B). Moreover, the Department, "in the name of this state, may commence, prosecute and defend all actions and proceedings to protect the interest of this state in lands within this state or the proceeds of lands within this state." A.R.S. § 37-102(C).

Certain parcels of State Trust Land are situated around Grand Canyon National Park and surrounded by federal land included in the Ancestral Footprints Monument. Those State Trust Land parcels, however, are not part of the national monument designation and the restrictions that apply to federal land included in the designation do not apply to state land. *See* Proclamation at 55338 (stating that the President may only declare a monument on "lands owned or controlled by the Federal Government").

The Proclamation preserves water rights and grazing leases on State Trust Land. *See* Proclamation at 55339 ("providing appropriate access for livestock grazing, recreation, hunting, fishing, dispersed camping, wildlife management, and scientific research" on the Ancestral Footprints Monument); *id.* (stating that the Proclamation does not "alter or affect agreements governing the management and administration of the Colorado River, including any existing interstate water compact"); *id.* ("Nothing in this proclamation shall be deemed to prohibit grazing pursuant to existing leases or permits within the monument, or the renewal or assignment of such leases or permits, which the BLM and Forest Service shall continue to manage pursuant to their respective laws, regulations, and policies."). And it maintains accessibility to those lands. *Id*. at 55341 (stating that roads and highway

---

[2] State Trust Land is land granted by the United States or otherwise acquired by the State of Arizona to be held in trust pursuant to the Enabling Act and Ariz. Const. art. X, § 1. *See also* State and Governor of Arizona's Motion to Intervene at pp. 2-3.

corridors will continue to be created, maintained, replaced, modified, upgraded, and expanded). From the State's point of view, little has practically changed for the State Trust Land except for the designation of the federal land around it.

## LEGAL STANDARD

Plaintiffs have the burden to establish jurisdiction in federal court. *See Sw. Ctr. for Biological Diversity v. FERC*, 967 F. Supp. 1166, 1172 (D. Ariz. 1997). "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [standing]."). It "asks whether a litigant is entitled to have a federal court resolve his grievance" and involves "constitutional limitations on federal-court jurisdiction." *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To establish Article III standing, plaintiffs must show: (1) that they suffered an injury in fact; (2) that the challenged conduct caused their alleged injury; and (3) that a favorable decision would likely redress the claimed injury. *Barnum Timber Co. v. United States EPA*, 633 F.3d 894, 897 (9th Cir. 2011).

To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A "concrete" and "particularized" injury must be "real," not "abstract," *id.*, and "must affect the plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (quotation omitted); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (The federal courts' "refusal to serve as a forum for generalized grievances has a lengthy pedigree."). And to be "actual or imminent," a threatened injury must be "certainly impending"—"allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). "[W]hen a federal

court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The court may also take judicial notice of "matters of public record" and other evidence "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *In re White Elec. Designs Corp. Sec. Lit.*, 416 F. Supp. 2d 754, 760 (D. Ariz. 2006); *see also DeFiore v. SOC LLC*, 85 F.4th 546, 553 n.2 (9th Cir. 2023) (noting that "materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rule[] 12(b)(1)"); *Knapp Med. Ctr. v. Burwell*, 192 F. Supp. 3d 129, 131 n.1 (D.D.C. 2016) (taking judicial notice of federal government website when considering a Rule 12(b)(1) motion); Fed. R. Evid. 201. Thus, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine*, 704 F.2d at 1077. However, the burden remains on the plaintiff "who invoked the federal jurisdiction." *Sw. Ctr. for Biological Diversity*, 967 F. Supp. at 1172.

**ARGUMENT**

ASL Plaintiffs lack standing to bring this suit. ASL Plaintiffs largely allege harm to interests that are not theirs to protect, but that instead can only be lawfully raised by the State and the executive branch. Moreover, their alleged harms are little more than speculation and conjecture about the *potential* impact of *possibly* decreased mining activity that *may* result more than eight years from now. Further, courts have declined to find Article III standing based on an alleged need to divert "time and effort" to activities that are no different than a plaintiff's normal business duties. Finally, ASL Plaintiffs cannot pursue their "generalized grievance" about a potential (and highly speculative) disruption

to the energy supply that could result from the establishment of the Monument. Because ASL Plaintiffs do not (and cannot) allege that the Monument has caused or will cause them concrete, particularized, actual, and imminent harm, they lack standing to bring their claims and the Court should dismiss their Complaint.

I. **ASL Plaintiffs lack authority to sue in federal court over harms to the State and State Trust Land.**

The Complaint relies heavily on allegations of harm to State Trust Land as well as an array of purported harms to the State, including to mining and groundwater interests on state land and in the State generally. But ASL Plaintiffs cannot establish standing based on those allegations. At bottom, they are seeking to vindicate interests that are not lawfully theirs to assert in court.

*First*, most of the harms alleged in the Complaint are alleged harms to State Trust Land. *See* Compl. ¶¶ 165-175; 191(b)-(c), (g), (i)-(l); 192(a), (c), (e)-(f). For example, ASL Plaintiffs claim the Proclamation will: (1) reduce the value of or revenue from parcels of State Trust Land surrounded by the Monument, (2) increase the costs of maintaining State Trust Land, and (3) restrict access to and uses of State Trust Land. Compl. ¶¶ 169-171, 173-176, 191(b)-(c), (g), (j)-(k), 192(c)-(f). Even putting aside the questionable accuracy and highly speculative nature of these allegations, ASL Plaintiffs lack authority to assert these harms.

As the Complaint itself acknowledges, "[t]he administration, charge, and control of state land is vested in the state land department." Compl. ¶ 191(h) (quoting *Berry v. Ariz. State Land Department*, 651 P.2d 853, 855 (Ariz. 1982)); *see also* A.R.S. § 37-102(B); Compl. ¶ 191(g) (citing *Silver v. Babbitt*, 166 F.R.D. 418, 430 (D. Ariz. 1994), which acknowledges the Department's "strict[] obligat[ion] to manage the trust lands for the benefit of the trust and its beneficiaries"). The State Land Department is also the entity authorized by law to "commence, prosecute and defend," on behalf of the State, "all

actions" to protect State Trust Land and proceeds therefrom. A.R.S. § 37-102(A)-(C); *see also supra* Part II. ASL Plaintiffs cannot establish an individualized injury—let alone one that confers standing for them to sue in federal court—based on the alleged harms to State Trust Land. The Legislature's constitutional power to "provide laws for the sale or lease of all State Trust Land," Compl. ¶ 85, is also not enough. That authorization is limited to legislating, not litigating. *See State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997) (stating that "those who make the law [must] be different from those who execute and apply it" (quoting *Matter of Walker*, 153 Ariz. 307, 310 (1987)).

*Second,* ASL Plaintiffs are similarly without authority to sue to vindicate interests of the State generally. The Complaint alleges injuries to Arizona's mining interests. Compl. ¶¶ 177-89. For example, ASL Plaintiffs claim that a "permanent" ban on new mining within the Ancestral Footprints Monument will reduce State tax revenue and endanger the State and country's nuclear energy supply by continuing foreign reliance on uranium. Compl. ¶¶ 180-87. These allegations pile conjecture upon conjecture, but even if the assertions (and assumptions) had a hint of truth, they are all injuries *to the State of Arizona*, for which only the Attorney General, on behalf of the State—not ASL Plaintiffs—has authority to sue.[3] *Block*, 189 Ariz. at 277 ("[C]onducting litigation on behalf of the state, as authorized by the Legislature, is an executive function.").[4]

---

[3] Legislative Plaintiffs' alleged harms stemming from concerns about reduced mining suffer from a separate fatal deficiency: lack of redressability. Even if the Court invalidated the Proclamation, mining in the area would still remain restricted until 2032. *See supra* Part I (mining on federal land in the area has been restricted since 1984 and would continue to be until 2032 notwithstanding the new Monument); *Lujan*, 504 U.S. at 570 (finding no Article III standing where "resolution by the District Court would not have remedied respondents' alleged injury").

[4] The same is true for the State's interest in "protecting the people's freedom" and "preserv[ing] the checks and balances of the United States Constitution." Compl. ¶ 13. That interest does not transform ASL Plaintiffs into roving defenders of the United States Constitution. In particular, they are not automatically authorized to "pursue legal remedies" every time they disagree with federal policy. *Cf. id.* (cleaned up).

A state may designate an official to represent it in federal court. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663-64 (2019). Here, Arizona has designated the Attorney General to represent the State on any case brought in federal court. A.R.S. § 41-193(A)(3) (stating that the Attorney General "[r]epresent[s] this state in any action in a federal court"). Arizona also designates one official to speak on behalf of the State to the federal government: the Governor. A.R.S. § 41-101(A)(5) ("The governor [s]hall be the sole official means of communication between this state and the government of any other state or the United States."). Governor Hobbs did just that when she encouraged the federal government to establish the Ancestral Footprints Monument. Compl. ¶ 191(h). The ASL Plaintiffs are without authority to come before this Court as if they were representing the State's interest and assert different positions on these matters. *See Block*, 189 Ariz. at 271-72 (legislative body may not insert itself as a party in federal court, "asserting positions in part contrary to those being asserted by the [executive branch] on behalf of the state in those same proceedings.").

*Third*, despite the Proclamation's carveout for existing water rights, ASL Plaintiffs allege that the Monument designation creates ambiguity about water rights "in the region." Compl. ¶¶ 188-89.[5] Even if ASL Plaintiffs' allegations had any merit, the Arizona Department of Water Resources—whose director serves at the pleasure of the Governor—controls and supervises surface and groundwater for the State. A.R.S. § 45-103. The Department of Water Resources is also the State entity charged with prosecuting and defending "all rights, claims and privileges of this state respecting interstate streams." *Id.* at § 45-105(A)(9). And to the extent the alleged harms pertain to water rights of State Trust

---

[5] Some of these claimed injuries are easily belied by the terms of the Proclamation itself, which unambiguously maintain the existing water rights and "agreements governing the management and administration of the Colorado River, including any existing interstate water compact." Proclamation at 55339.

Land, as explained above, the State Land Department has authority over those claims. Thus, ASL Plaintiffs lack authority to vindicate these interests.

*Finally*, granting ASL Plaintiffs standing to sue in court based on any of these alleged harms to the State and the executive branch would raise significant separation of powers concerns. Arizona's Constitution requires a clear separation of powers, stating that each of the three branches "shall be separate and distinct" and that none of them "shall exercise the powers properly belonging to either of the others." Ariz. Const. art. III; *see also Block*, 189 Ariz. at 277 (holding that "to restore, maintain, and advance the state's sovereignty and authority over issues that affect this state and the well-being of its citizens" is an executive function); *id.* at 278 (holding unconstitutional a "legislative body performing an executive function"); *see also* United States' Motion to Dismiss at Part I.1.a., ECF No. 49. Importantly, "those who make the law [must] be different from those who execute and apply it." *Block*, 189 Ariz. at 275 (quoting *Walker*, 153 Ariz. at 310). That ASL Plaintiffs may disagree with current executive branch officials, *see* Compl. ¶ 191(h), does not authorize them to disregard Arizona's statutory scheme or the separation of powers enshrined in the State's constitution. Finding otherwise would permit ASL Plaintiffs to unconstitutionally "take over an executive function by eliminating the" executive officials from the process. *Block*, 189 Ariz. at 277 (The Arizona Legislature cannot enhance its own control by "remov[ing] the Attorney General or any representative of the executive from any semblance of control."); *see also* United States' Motion to Dismiss at Part I.1.a., ECF No. 49.[6]

---

[6] To the extent the Legislature relies on its own procedural rules purporting to grant the Senate President and House Speaker authority to either litigate this case or as a ground for Article III standing, that reliance is misplaced. *See* Compl. ¶ 11. The Legislature's procedural rules simply designate who in each chamber is authorized to speak on behalf of that chamber in court. House Rule 4(K); Senate Rule 2(N). The rules are insufficient on their own to confer standing. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799-800, 802 (2015); *see also Comm. on Judiciary of United States House of Representatives v. McGahn*, 968 F.3d 755, 763 (D.C. Cir. 2020) ("The Supreme

## II. ASL Plaintiffs' litany of speculative and conjectural alleged harms do not confer Article III standing.

In addition to largely asserting harms to the State and to State Trust Land, the Complaint is replete with alleged harms that are "far too speculative and conjectural" to establish standing. *Drake v. Obama*, 664 F.3d 774, 781 (9th Cir. 2011). For example, the Complaint speculates about: (1) the potential impact of the Proclamation on the value of, proceeds from, and costs to maintain State Trust Land; *see supra pp.* 7-8; (2) potential decreased mining activity, leading to reduced economic development, Compl. ¶¶ 177-187, 193(c)-(e), and possible disruption to the nuclear energy supply, Compl. ¶¶ 185-187, 191(d), 192(g), 193(g), 194(d), 195(c); (3) potential lost tax and other revenue, Compl. ¶¶ 191(c), 192(d), 193(b), 194(a), 195(a); and (4) the potential impact on water rights and the State's water supply, Compl. ¶¶ 188-189, 191(e), 194(b).

However, plaintiffs cannot satisfy Article III standing requirements by guessing at future harms. ASL Plaintiffs assert no facts indicating that mining activity, water rights, state land values, or access to state land parcels have been impacted *at all* by the Monument designation. Indeed, the Proclamation protects existing rights on federal land and does not restrict mining on State Trust Land. *Supra* Part II. The Proclamation also protects and contemplates expanding roads and highways within the Ancestral Footprints Monument. *Supra* Part II.[7] The alleged concerns are simply not actual or sufficiently imminent to confer standing. *Clapper*, 568 U.S. at 410 (plaintiff may not rest on a "highly attenuated chain of possibilities" to establish harm); *see also Lake v. Fontes*, 83 F.4th 1199, 1204 (9th

---

Court has confirmed that these general principles of standing apply to institutional injuries claimed by legislative bodies.").

[7] Pinyon Plain Mine is the only active uranium mine in the area of the Ancestral Footprints Monument. This Mine is on federal land and the Monument's designation has not halted its operations. As of January 2024, it was actively removing and transporting ore. Pinyon Plain Mine (formerly Canyon Uranium Mine), United States Forest Service, https://www.fs.usda.gov/detail/kaibab/home/?cid=FSM91_050263.

Cir. 2023) (no standing where plaintiffs failed to claim past injury and "failed to establish that a future injury was either imminent or substantially likely to occur"); *Wright v. Serv. Emps. Int'l Union Loc*. 503, 48 F.4th 1112, 1118 (9th Cir. 2022) (plaintiffs cannot rely "on mere conjecture").

### III. ASL Plaintiffs' allegations regarding diverted "time and effort" to otherwise normal business duties do not confer Article III standing.

ASL Plaintiffs also allege a series of harms that simply consist of their normal business duties. For example, the Legislature claims that it is harmed by the Monument designation because it might need to make new budget decisions and address water issues. Compl. ¶¶ 191(b)-(c), (e). The State Treasurer claims harm from needing to account for increases and decreases in State revenue. Compl. ¶ 192(d). And the Legislature, Treasurer, Mohave County, Colorado City, and Fredonia all allege harm because they might need to "divert . . . time and efforts to focus on issues created by the Proclamation," including publicly commenting on a Monument management plan, seeking information about Monument management, and passing ordinances and resolutions to address the Monument. Compl. ¶¶ 191(f), 192(e), (193(e), 194(c), 195(b). None of these allegations satisfy Article III's standing requirement.

An injury cannot establish standing if it is no more than merely "business as usual." *Am. Diabetes Ass'n v. United States Dept't of the Army*, 938 F.3d 1147, 1155 (2019); *see also Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021); *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1130 (Fed. Cir. 2021). ASL Plaintiffs' claimed injuries are just that: The Legislature must pass a spending bill every year, and that bill is necessarily impacted by any manner of global, national, statewide, and local concerns. The Legislature also admits that it is already focusing on water issues in a State facing long-term drought. *See* Compl. ¶ 191(e). The Treasurer's duties—to take "account of all monies received and disbursed, and keep separate accounts of the different

funds and appropriations of monies," A.R.S. § 41-172—are the same no matter the amounts in her ledger. *Friends of the Earth,* 992 F.3d at 942; *Am. Diabetes Ass'n*, 938 F.3d at 1155. And each of the ASL Plaintiffs must stay apprised of relevant issues and govern despite changing circumstances.

Even so, the Ancestral Footprints Monument has existed for nearly a year now, and yet the Complaint does not allege that any of the Plaintiffs actually diverted time as alleged. Compl. ¶¶ 191(f), 192(e), 193(e), 194(c), 195(b). *Cf. Friends of the Earth*, 992 F.3d at 942–43 (explaining that "activities undertaken after suit was filed," such as litigation expenses and publicity, do not confer standing). This Court can only hear a case with real parties who have real injuries, and this lawsuit just isn't that.

## IV. ASL Plaintiffs' speculative allegations about potential disruptions to the energy supply are non-cognizable generalized grievances and not fairly traceable to the Monument or redressable by a favorable ruling.

Finally, ASL Plaintiffs allege harm as "a consumer of energy for buildings, structures, and more," and claim they are subject to "risks of power disruption . . . from the natural consequences of the Proclamation: further degradation of supply of domestic uranium and thus reinforced reliance on foreign imports of uranium by domestic nuclear electricity suppliers." Compl. ¶ 192(g); *see also id.* ¶¶ 191(d), 193(g), 194(d), 195(c). According to ASL Plaintiffs, "[t]here is every reason to believe such a risk exists" because foreign nations, like Russia, with interests adverse to the United States, "'leverage' their control over [uranium] companies 'to further geopolitical ambitions" and possess "military means to deny [the United States] access to Kazakh and Uzbek uranium exported through Russian ports." Compl. ¶ 186.

In addition to piling conjecture upon conjecture, these allegations fail to establish "concrete and particularized harm" specific to ASL Plaintiffs. Indeed, every energy consumer in the country would suffer the same alleged injuries. Such generalized grievances do not meet the particularized injury requirement in Article III. *Lance*, 549 U.S.

at 442 (refusing to find standing for an "undifferentiated, generalized grievance about the conduct of government").

Moreover, ASL Plaintiffs' purported injuries rely on actions by third parties—namely, foreign nations with interests adverse to the United States and foreign uranium companies subject to those hostile nations' control. *See* Compl. ¶ 186. Because the alleged harm—the potential "risks of power disruption," *see, e.g.*, *id.* ¶192(g)—depends on choices by third parties not before the Court, they are not fairly traceable to or caused by the establishment of the Ancestral Footprints Monument; nor do they satisfy the redressability requirement for Article III standing. *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 806 (9th Cir. 2015); *see also Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910, 918 (D. Ariz. 2020) (finding no standing where there is no likelihood that judicial relief would prevent or redress the claimed injury). Russia's ability to "deny [the United States] access to Kazakh and Uzbek uranium exported through Russian ports," Compl. ¶ 186, does not depend on whether there is a new national monument near the Grand Canyon.

## CONCLUSION

Based on the foregoing, the Governor and State of Arizona respectfully request the Court grant their Motion and dismiss ASL Plaintiffs' Complaint with prejudice. Any effort to amend the Complaint is futile because ASL Plaintiffs lack authority to sue over harms to the State of Arizona and they have not and will not suffer actual or imminent injuries as a result of the Ancestral Footprints Monument's designation.

RESPECTFULLY SUBMITTED this 13th day of September, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By /s/ Joshua D. Bendor
    Joshua D. Bendor
    *Solicitor General*

        Alexander W. Samuels
*Principal Deputy Solicitor General*
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592

*Attorneys for Intervenor-Defendant
   State of Arizona*


By <u>/s/  Sambo (Bo) Dul (with permission)</u>
    Sambo (Bo) Dul
    *General Counsel*
    Sean Berens
    *Deputy General Counsel*
    Office of the Arizona Governor
    1700 West Washington Street, 9th Floor
    Phoenix, Arizona 85004

*Attorneys for Intervenor-Defendant
   Arizona Governor Katie Hobbs*